**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Nghi V Tran,<br>Petitioner,<br>v.<br>JAMES JANECKA ET AL.,<br>Respondents. | Case No. 5:26-cv-02650-AYP<br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner, Nghi V Tran, is a native and citizen of Vietnam who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California. (Dkt. No. 1.) In 1992, at the age of 16, Petitioner lawfully entered the United States and was issued an I-94 record. *Id*. He entered with his parent fleeing the Vietnamese communist government. *Id*. at 5.

Following convictions from 1995 to 1996, on June 1, 1998, the Petitioner was ordered removed by an Immigration Judge ("IJ"). *Id*. Petitioner was held

in the custody of U.S. Immigration and Customs Enforcement ("ICE") following the order of removal until sometime in 2000 (nearly two years) due to the inability to remove him to Vietnam. *Id*. After release, Petitioner was placed under periodic or annual check-in dates with ICE beginning sometime around 2005. *Id*.; Dkt. No. 9 at 2. He generally reported as required and without incident. On April 25, 2005, ICE took Petitioner into custody and on or about the same date, released him pursuant to an Order of Supervision ("OSUP") due to an inability to remove him to Vietnam. (Dkt. No. 1; Dkt. No. 9 at 2.)

Petitioner was scheduled to report on March 28, 2026, with ICE. On May 14, 2026, Petitioner was arrested near his home and taken into ICE custody. (Dkt. No. 1 at 5.) He was given a Notice of Revocation of Release noting that his OSUP was revoked because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (Dkt. Nos. 15-2, 18-2.) He is currently detained at the Adelanto ICE Detention Center located in Adelanto, CA. (Dkt. No. 1.)

On May 18, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing his detention violates *Zadvydas v. Davis* and 8 U.S.C. § 1231 because the Government has not shown that there is a significant likelihood of his removal to Vietnam in the reasonably foreseeable future because he is part of the class of pre-1995 Vietnamese arrivals, protected from repatriation to Vietnam. (Dkt. No. 1 at 9.) Further, he argues that Respondents have violated his procedural and substantive due process rights and the Administrative Procedures Act ("APA") because the Respondents failed to provide a change of circumstances to justify re-detaining Petitioner. *Id*. At 10–

11; Dkt. No. 10. Based on these alleged violations, he asks the Court to issue a writ of habeas corpus requiring his immediate release from custody.

In their Answer, Respondents argue that the pre-1995 policy has "been dismantled" and Petitioner can be removed now as it has other similarly situated petitioners. (Dkt. No. 9.) Respondents did not present opposition to Petitioner's additional claims. *Id.*

The Court concludes that Petitioner is entitled to habeas relief. Respondents have failed to demonstrate that there is a reasonable likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future, and, it follows, that his ongoing detention is not authorized by 8 U.S.C. § 1231(a). While the Government has been able to remove some pre-1995 Vietnamese immigrants pursuant to a 2020 Memorandum of Understanding ("Memorandum") between the United States and Vietnam, such removals are relatively rare, and Respondents have provided no evidence that Vietnam is likely to accept Petitioner. The Court also finds that Respondents violated applicable regulations by revoking Petitioner's OSUP without providing a sufficient changed circumstance. Accordingly, the Court orders that the Petition be granted, Petitioner be released immediately, and Respondents be prevented from re-detaining Petitioner without complying with procedures set forth in 8 C.F.R § 241.13.

## II. FACTUAL BACKGROUND

Petitioner, Nghi V Tran, is a native and citizen of Vietnam who is currently in the physical custody of Respondents at the Adelanto ICE Processing Center, in Adelanto, California. (Dkt. No. 1.) In 1992, at the age of 16, Petitioner lawfully entered the United States and was issued an I-94 record.

*Id*. He entered with his parent fleeing the Vietnamese communist government. *Id*. at 5.

Following convictions from 1995 to 1996, Petitioner was served a Notice to Appear ("NTA") charging him with inadmissibility pursuant to INA's § 212(a)(2)(A)(i) as an alien who is convicted of or who admits having committing acts which constitute the essential elements of a crime involving moral turpitude. (Dkt. No. 9 at 2; 8 U.S.C. § 1182(a)(2)(A)(i).) Then on June 1, 1998, the Petitioner was ordered removed by an IJ. (Dkt. No. 1 at 5.) He did not appeal that order; thus, it is a final order of removal. (Dkt. No. 9; *see* 8 U.S.C. § 1101(a)(47)(A)(ii).) Petitioner states that he was held in ICE custody following the order of removal until sometime in 2000 due to the inability to remove him to Vietnam. *Id*. Respondents dispute the timing and state that he was released from ICE custody in June 1999 pursuant to a grant of parole. (Dkt. No. 9.) In 2003, Petitioner was convicted of another crime and sentenced to less than one year in jail. (Dkt. No. 9 at 2.) On April 25, 2005, ICE took Petitioner into custody and on or about the same date, released him pursuant to an Order of Supervision ("OSUP"). (Dkt. No. 9 at 2.) After his release, Petitioner alleges he generally reported as required and without incident. (Dkt. No. 1.) Respondents dispute this and state that he failed to report for his CART[1] appointment on March 24, 2026. (Dkt. No. 15 at 3.) He was deactivated in CART on March 31, 2026, because of non-compliance with CART reporting requirements. *Id.* In the aggregate, Petitioner has been in ICE custody for more than one year. (Dkt. No. 10 at 2.)

Petitioner was scheduled to report on March 28, 2026, with ICE. (Dkt. No. 1 at 5.) On May 14, 2026, the Petitioner was arrested near his home and taken into ICE custody. *Id*. He was given a Notice of Revocation of Release

[1] CART is Compliance Assistance Reporting Terminal. It requires regular reporting one time a year. (Dkt. No. 15.)

noting that his OSUP was revoked because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (Dkt. Nos. 15-2, 18-2.) He is currently detained at the Adelanto ICE Detention Center located in Adelanto, CA. (Dkt. No. 1 at 5.) Respondents claimed when they detained Petitioner on May 14, 2026, there was a changed circumstance, because "DHS expects that a travel document for Vietnam will soon be issued and that DHS will be able to effectuate his removal to Vietnam in the reasonably foreseeable future." (Dkt. No. 9 at 3.) Further stating in the attached declaration of Department of Homeland Security ("DHS") Deportation Officer Rogelio A. Torres, "[i]n my recent experience, the government of Vietnam has been issuing documents *when* DHS has made such requests." (Dkt. No. 9-1, Decl. of Rogelio A. Torres (emphasis added).) However, the record indicates that Respondents did not seek a formal request for travel documents from the Embassy of Vietnam on behalf of Petitioner until two months after detaining Petitioner, on July 13, 2026—coincidentally, the same day the Court issued an order for a hearing in this case. *See* Dkt. No. 12 (ordering parties to appear for a hearing on Friday, July 17, 2026); *see also* Dkt. No. 15-5 (requesting travel documents from the Embassy of Vietnam on July 13, 2026).

On May 18, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing his removal is not reasonably foreseeable and continued detention is unreasonable because he is part of the class of pre-1995 Vietnamese arrivals, protected from repatriation to Vietnam. (Dkt. No. 1 at 9.) Further, he argues that Respondents have violated his procedural and substantive due process rights and violation of the Administrative Procedures

Act ("APA") because the Respondents failed to provide a change of circumstances to justify re-detaining Petitioner. Id. At 10–11; Dkt. No. 10.

In their Answer, Respondents argue that the pre-1995 policy has "been dismantled" and Petitioner can be removed now as it has other similarly situated petitioners. (Dkt. No. 9 at 4.) Respondents did not present opposition to Petitioner's additional claims. *Id.*

Respondents filed a Notice of Intended Removal of Petitioner on July 11, 2026. (Dkt. No. 11.) On July 13, 2026, the Court ordered that Petitioner not be removed from the jurisdiction until this Court addresses the issues raised in the habeas petition. (Dkt. No. 12.) On July 13, 2026, the Court further ordered the parties to appear for a hearing on Friday, July 17, 2026, to present any supplemental evidence of efforts to secure Petitioner's removal. (Dkt. No. 12.) On July 17, 2026, Respondents submitted supplemental briefing indicating that they made a formal request to the Vietnamese Embassy for travel documents on July 13, 2026. (Dkt. No. 13-1.)

For the reasons set forth below, the Court **GRANTS** the habeas petition.

## III. PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on May 18, 2026. (Dkt. No. 1.) The Court, on May 18, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General Order. (Dkt. No. 5.) Respondents filed their Answer on May 26, 2026. (Dkt. No. 9.) Petitioner filed her Reply on May 28, 2026. (Dkt No. 10.) Thus, the matter is fully briefed. Respondents filed a Notice of Intended Removal of Petitioner on July 11, 2026. (Dkt. No. 11.) On July 13, 2026, the Court ordered that Petitioner not be removed from the jurisdiction until this Court addresses the issues raised in the habeas petition.

(Dkt. No. 12.) The Court further ordered the parties to appear for a hearing on Friday, July 17, 2026, to present any supplemental evidence of efforts to secure Petitioner's removal. *Id.* On July 17, 2026, Respondents submitted supplemental briefing indicating that they made a formal request to the Vietnamese Embassy for travel documents on July 13, 2026. (Dkt. No. 13-1.) Pursuant to the hearing, and due to gaps in the record, the Court ordered the parties to file further supplemental briefing. (Dkt. No. 14.) Respondents filed a supplement on July 27, 2026, Dkt. No. 15, and Petitioner filed a response to that filing on July 28, 2026, Dkt. No. 16. The Court ordered Respondents to file a missing page from one of their filings on August 4, 2026. (Dkt. No. 17.) The Respondent filed the missing page in their supplement on August 20, 2026. (Dkt. No. 18.) The matter is fully briefed.

Petitioner voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment on May 18, 2026. (Dkt. No. 3.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 6.)

## IV. DISCUSSION

The Court now turns to the merits of Petitioners' claims. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has not shown a significant likelihood of his removal in the reasonably foreseeable future and because it revoked his OSUP without providing a sufficient changed circumstance.

### A. Detention and Release under Section 1231.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The

"removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* at § 1231(a)(1)(B). Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed § 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690–96. The Court instead interpreted § 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Title 8 C.F.R. §§ 241.4 and 241.13 implement the Government's authority to detain or release noncitizens under 8 U.S.C. § 1231(a). Section 241.4, titled

"Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period," sets out "procedures DHS must follow to impose continued detention" beyond the removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 241.13, titled "Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future," sets out procedures to implement the statutory limit recognized in *Zadvydas*. *Id.* Sections 241.13(g)(1) and 241.13(h) provide that the Government "shall" release a noncitizen on an "order of supervision" if it determines that their removal is not reasonably foreseeable, unless "there are special circumstances justifying continued detention."

The regulations also specify procedures for the Government to revoke their OSUP and re-detain them. Section 241.13(i) allows DHS to revoke the noncitizen's OSUP and re-detain them if they violate their conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, *on account of changed circumstances*, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2) (emphasis added). *See also Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3 (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)....").

Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023)).

**B. History of Vietnam's Refusal to Repatriate Immigrants Ordered Removed from the United States**

The United States has a complex history with Vietnam and the countries'

diplomatic agreements are in flux. The Court briefly draws on the record developed in *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020), to provide context for the parties' dispute as to whether Respondents have made a showing that Petitioner's removal to Vietnam is reasonably foreseeable. In analyzing a similar dispute, the Court in *Tung Thanh Nguyen Truong v. Markwayne Mullin, et al.*, explained:

> After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam ("Vietnam"). Around that time, waves of people from the former Republic of Vietnam (South Vietnam) fled the country to escape political persecution. Under various humanitarian programs, the United States accepted hundreds of thousands of Vietnamese refugees, including Petitioner. *Id.* at 1083 (citations omitted).
>
> Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. In 2008, the United States and Vietnam reached a diplomatic agreement under which Vietnam agreed to start considering repatriation requests for certain Vietnamese immigrants. Specifically, the agreement obligated Vietnam to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. The agreement also provided that Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995. Relying on this provision, Vietnam maintained its policy of non-repatriation for pre-1995 Vietnamese immigrants after signing the 2008 agreement. *Id.* (citations and quotations omitted).
>
> Prior to 2017, ICE maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them. Accordingly, ICE adopted a policy of not detaining pre-1995 Vietnamese immigrants for longer than ninety days after their removal orders became final. After ninety days, ICE generally released them into the community on an OSUP. *Id.* (citations and quotations omitted).
>
> In 2017, ICE entered into negotiations with Vietnam that were aimed at amending the 2008 Agreement and developing a new policy that would allow for pre-1995 Vietnamese immigrants to be repatriated. These negotiations were somewhat successful. Although the 2008 agreement was not officially amended, Vietnamese officials verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to

accept any of them. *Id.* (citations omitted).

After receiving this verbal commitment in 2017, ICE departed from its longstanding practice of releasing pre-1995 Vietnamese immigrants with final orders of removal after ninety days of detention. Instead, it began detaining them for more than ninety days based on the possibility that Vietnam might issue the requisite travel documents. ICE also began re-detaining some pre-1995 Vietnamese immigrants who had previously been released on OSUPs. *Id.* at 1083-84 (citations omitted).

On August 6, 2018, ICE met with Vietnamese officials again to continue discussions about the status of pre-1995 Vietnamese immigrants. After that meeting, ICE reversed its position again. ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely. In October 2018, ICE instructed field offices to resume the practice of releasing pre-1995 Vietnamese immigrants within 90 days of a final order of removal. *Id.* at 1084 (citations omitted). Between 2017 and 2019, ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times, but Vietnam granted those requests only 18 times. *Id.* at 1087-88. The Government was forced to release many of those detainees in 2018. *Id.* at 1088.

In 2020, the United States secured a Memorandum of Understanding with Vietnam ("Memorandum"), which created a process through which the Vietnamese government could consider some pre-1995 Vietnamese immigrants for removal. The Memorandum limited consideration to persons meeting certain criteria, but many of these criteria are not publicly available. *See Nguyen v. Scott, 796 F. Supp. 3d 703, 715 (W.D. Wash.2025).* When an immigrant qualifies, the Memorandum provides only that Vietnam has "discretion whether to issue a travel document," which it exercises "on a caseby-case basis." *Quoc Chi Hoac v. Becerra,* No. 2:25-cv- 01740-DC-JDP, 2025 U.S. Dist. LEXIS 136002, 2025 U.S. Dist. LEXIS 136002, 2025 WL 1993771, at *5 (E.D.Cal. July 16, 2025).

In the post-Memorandum era, Vietnam has overwhelmingly declined to issue travel documents for pre-1995 immigrants. Quarterly reports that ICE agreed to submit as part of the *Trinh* class action settlement showed that between September 2021 and September 2023, only four Vietnamese immigrants who came to the United States before 1995 were given travel documents and deported.[2]

---

2 *See* Asian Law Caucus, Resources on Deportation of Vietnamese Immigrants Who Entered the U.S. Before 1995, (Jul. 15, 2025), available at https://www.asianlawcaucus.org/news-resources/guidesreports/ trinh-reports (last visited May 19, 2026) (providing links to the quarterly reports).

> On June 9, 2025, the current administration rescinded ICE's policy of generally finding that pre-1995 Vietnamese nationals were not likely to be removed in the reasonably foreseeable future. *See Nguyen, 796 F. Supp. 3d at 715.*

*Tung Thanh Nguyen Truong v. Markwayne Mullin, et al.*, No. 2:26-CV-03546-MBK, 2026 WL 1047908, at *4-5 (C.D. Cal. Apr. 15, 2026).

### C. Respondents Have Not Demonstrated that Petitioner may be Removed in the Reasonably Foreseeable Future

With this background in mind, the Court now turns to Petitioner's habeas claims, beginning with Petitioner's claim that he is entitled to release because the his removal is reasonably foreseeable.

#### 1. The Government Bears the Burden to Show Petitioner's Removal is Likely in the Reasonably Foreseeable Future

This Court finds that the Government bears the burden to demonstrate that Petitioner's removal is reasonably foreseeable to lawfully revoke his OSUP and re-detain him. *See Nguyen v. Marin*, 5:26-cv-01130-JFW-MAR, 2026 WL 822535, at *3 (C.D. Cal. Mar. 20, 2026); *Truong v. Lyons*, 5:26-cv-00021-AS, 2026 WL 855150, at *6 (C.D. Cal. Mar. 20, 2026); *Pham v. Marin*, 5:26-cv-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026); *Espada v. Doe*, No. 5:25-cv-02983-JWH-KES, 2026 WL 181539, at *3-4 (C.D. Cal. Jan. 20, 2026), *adopted*, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); *Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, (C.D. Cal. Nov. 3, 2025); *El Abed v. Noem*, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4 (C.D. Cal. Oct. 28, 2025).

Section 241.13(i)(2) authorizes the Government to revoke a noncitizen's OSUP "if, on account of changed circumstances, the Service determines that

there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." While the regulation does not expressly state that the Government bears the burden to show a significant likelihood of removal, the legal context in which it was adopted and principles of statutory interpretation compel that result. In *Zadvydas*, the Supreme Court instructed that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the Government cannot rebut the noncitizen's showing, then the noncitizen's detention is "no longer authorized by statute" and they must be released "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699–700.

Section 241.13 codifies this burden-shifting framework. It first provides procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release on an OSUP. *See* 8 C.F.R. § 241.13(d)-(g). It then provides authority for DHS to revoke a noncitizen's OSUP and re-detain them where they violated the terms of their release or "changed circumstances" establish that their removal is now reasonably foreseeable. *Id.* § 241.13(i)(1)-(3). The provision authorizing revocation of an OSUP based on "changed circumstances," Section 241.13(i)(2), therefore only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); *id.* at § 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not significantly likely in the reasonably foreseeable future").

As explained in *Truong v. Markwayne Mullin*, this means that

noncitizens subject to revocation of their OSUP have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Tung Thanh Nguyen Truong, v. Markwayne Mullin*, et al., No. 2:26-CV-03546-MBK, 2026 WL 1047908, at *6 (C.D. Cal. Apr. 15, 2026); *see also Zadvydas*, 533 U.S. at 701. Thus, consistent with *Zadvydas*, then, Section 241.13(i)(2) must be construed to place the burden on DHS to "rebut" that showing by demonstrating there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future "on account of changed circumstances."

Further, in this case, Petitioner's prolonged detention independently places the burden on Respondents to demonstrate that his removal is likely in the reasonably foreseeable future. Respondents concede that the presumptively reasonable period for removal is six months. *Zadvydas*, 533 U.S. at 701. After the six-month period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting *Zadvydas*, 533 U.S. at 689–701).

Here, Petitioner was detained and in ICE custody for over a year from 1998 to 2000 and has been detained for an additional three months since the filing of this Petition on May 18, 2026. (Dkt. No. 1 at 5.) Respondents argue in their Answer that he has not been detained for longer than six-months. (Dkt. No. 9 at 3.) Even relying on the timeline in Respondents' Answer, Petitioner was taken into custody on February 12, 1998, and released June 18, 1999, amounting to seventeen months in custody. (Dkt. No. 9 at 2.) Courts addressing the issue have found that release from custody does not restart the six-month period. *Sarks Vardanyan v. Kristi Noem, at al.*, No. 2:26-CV-02248-SPG-SP,

2026 WL 867925, at *4 (C.D. Cal. Mar. 26, 2026). *See Phan v. Warden of Otay Mesa Det. Facility*, 813 F. Supp. 3d 1179, 1184 (S.D. Cal. 2025) (finding that "[m]ost courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them."). As Petitioner has been detained for twenty months in the aggregate, he has been detained beyond the presumptively reasonable six month period for removal.

Respondents argue that Petitioner, the alien, must provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. No. 9.) But the six-month presumption of reasonableness in *Zadvydas* is not applicable to cases, like this one, where a noncitizen has already been detained and released on an OSUP. Petitioner already met his burden to show that his removal is not reasonably foreseeable. Since that time, more than twenty years have passed without the Government attempting to obtain travel documents for Petitioner or taking any other steps to secure his removal. The Government does not enjoy another six-month presumption of reasonableness when it elected to re-detain Petitioner while it attempts, again, to remove him. *See Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" and collecting cases). *See also Bailey v. Lynch*, No. 16-cv-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("[T]he removal period does not restart simply because an alien who has previously been released is taken back into custody."). "Under section 241.13(i)(2), when ICE revokes release to effectual removal, it is *ICE's burden* to show a significant likelihood that the alien may be removed." *Id.*

(cleaned up) (emphasis in original).

**2. Respondents Have Not Met Their Burden**

The Court finds that Respondents have failed to meet their burden under the regulation to demonstrate "changed circumstances" such that Petitioner's removal is reasonably foreseeable and his re-detention was authorized.

Respondents submitted no evidence with their Answer to demonstrate that removals of pre-1995 Vietnamese immigrants are likely in general or that the Government is likely to remove Petitioner in particular. Instead, Respondents argue that Petitioner's removal is likely in the reasonably foreseeable future because the policy restricting repatriation of pre-1995 immigrants was dismantled, and because a similarly situated person to the Petitioner was removed in March 2026. (Dkt. No. 9 at 4.) In support of their position, Respondents cite several habeas cases in this District that were mooted by the removal of the Vietnamese petitioners. *Id.* But the fact that the Government has been able to remove *some* pre-1995 Vietnamese immigrants does not show that there is a significant likelihood of *Petitioner's* removal in the reasonably foreseeable future. *See Bui*, 2025 WL 4061564, at *3 ("evidence that others have been removed, without a specific comparison to Petitioner's case, do little to show that Petitioner, himself, is likely to be removed in the reasonably foreseeable future").

Respondents provide no statistics or other evidence regarding how often the Government has requested and received travel documents from Vietnam, and no information about whether the people for whom it has received travel documents are pre-1995 immigrants and otherwise similarly situated to Petitioner. *See Espada*, 2026 WL 181539, at *5 (finding that the Government had not met its burden to show that removal was reasonably foreseeable because it did not provide statistics on the "the total number of [travel

document] requests that were made to Vietnam" or how many Vietnamese removals involved pre-1995 Vietnamese immigrants). Moreover, Respondents argue the policy for not accepting Vietnamese immigrants who left Vietnam before 1995 has been dismantled—presumably alluding to the 2008 U.S.–Vietnam Repatriation Agreement and the 2020 Memorandum which established a process of review and issuance of travel documents for Vietnamese citizens ordered removed. But this is not sufficient by itself to show a changed circumstance or a significant likelihood of Petitioner's removal. *See Id.*; *Quan v. Bowen*, No. 5:25-CV-02546-HDV-PVC, 2025 WL 3691858, at *4-5 (C.D. Cal. Nov. 14, 2025); *Bui*, 2025 WL 4061564, at *3; *Nguyen*, 788 F. Supp. 3d at 151.

Moreover, Respondents did not provide evidence that they had requested travel documents from Vietnam for Petitioner in their Answer. Respondents only assert in their Answer that "pre-1995 Vietnamese immigrants are now routinely removed to Vietnam" and "ICE intends to remove Petitioner to Vietnam." (Dkt. Nos. 9, 9-1.) In fact, Respondents had not submitted a request for travel documents to the Vietnamese Embassy until this Court scheduled a hearing for the case—two months after Petitioner was detained. Respondents assert that "DHS expects that a travel document for [Petitioner] will soon be issued." (Dkt. No. 13-1.) Courts have found that, even where the Government has requested travel documents for a noncitizen, that alone is insufficient to meet Respondents' burden under 8 C.F.R. § 241.13(i)(2). *See, e.g., Quan*, 2025 WL 3691858, at *5 (finding the Government had not met its burden where "only evidence and argument as to the likelihood of Petitioner's reasonably foreseeable removal is that it requested his travel documents"); *Pham*, 2026 WL 712946, at *4 (same); *Nguyen*, 788 F. Supp. 3d at 152 (same).

Here, the Government had not started the process to obtain travel

documents for Petitioner or taken any concrete steps to effectuate his removal at the time he was detained. Since its request for travel documents to the Embassy of Vietnam on July 13, 2026, it is unclear whether there was a response from the government or any more developments regarding Petitioner's travel documents. "At best, the government has demonstrated a 'mere possibility that removal will occur,' which is insufficient to carry its burden of showing a 'significant likelihood' of removal." *Pham*, 2026 WL 712946, at *4 (quoting *Yan-Ling X.*, 2025 WL 3123793 at *4).

In consideration of the low rates at which Vietnam issues travel documents for pre-1995 immigrants to the United States, the non-public availability of the criteria Vietnam uses to makes its decisions on repatriation of such individuals, and the fact that the fact that Respondents have merely requested, but not actually secured, travel documents for Petitioner, the Court cannot conclude that Respondents have met their burden under 8 C.F.R. § 241.13(i)(2).

**C. Respondents Did Not Comply with Regulations and Procedures to Revoke Petitioner's OSUP**

Respondents failed to follow the required procedures for revoking Petitioner's OSUP because the only identified changed circumstances listed on his Notice of Revocation of Release is that "ICE is seeking a travel document to effectuate your expeditious removal to Vietnam." (Dkt. No. 18-2.)

When the Government revokes a noncitizen's OSUP based on its determination that there is a significant likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be: (1) "notified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the

notification." 8 C.F.R. § 241.13(i)(3). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

The only identified changed circumstances listed on his Notice of Revocation of Release is that "ICE is *seeking* a travel document to effectuate your expeditious removal to Vietnam." (Dkt. No. 18-2 (emphasis added).) The Respondents did not submit a formal request to the Embassy of Vietnam for travel documents until July 13, 2026, two months after Petitioner was taken into custody. (Dkt. No. 15-5.) "When travel documents are requested *after* revocation of release, courts have granted the petition for writ of habeas corpus and ordered petitioner's immediate release, even if travel documents were subsequently secured. *Pham v. Warden*, No. 1:25-CV-01873-DC-AC (HC), 2026 WL 849861, at *12 (E.D. Cal. Mar. 27, 2026) (emphasis added). *See e.g.*, *Munagi v. McDonald*, 813 F. Supp. 3d 225, 228-29 (D. Mass. 2025) (granting petitioner's release, despite the fact that the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until *after* petitioner's release had been revoked); *Duong v. Charles*, No. 1:25-CV-01375-SKO, 2025 WL 3187313, at *3, *5-6 (E.D. Cal. Nov. 14, 2025), *3, *5-6 (granting petitioner's writ and ordering his immediate release, despite the fact that the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month *after* petitioner's release had been revoked); *Sarail A. v. Bondi*, 803 F.

Supp. 3d 775, 788–89 (D. Minn. 2025) (recommending petitioner's writ of habeas corpus be granted and petitioner released after concluding that respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice").

A "growing number of courts . . . have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release." *Nguyen v. Noem*, No. 8:25-cv-02654-HDV-DSR, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (collecting cases).

The Court agrees that release is the appropriate remedy for Respondents' regulatory violations. The purpose of the regulations—notice, an interview, and an opportunity to be heard—is to ensure that the Government does not wrongly revoke a noncitizen's OSUP and deprive them of their liberty. Because Petitioner has been prejudiced by the denial of these protections, Petitioner should be returned to the "status quo," which "is Petitioner's release on his [ ] OSUP before his current re-detention." *Nazarian*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Cruz v. Rios, et al.*, No. 26-01374-cv-MWF-DSR, 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (same); *Bolandi v. Noem*, No. 5:26-CV-00628-MCS-AGR, 2026 WL 485764, at *3 (C.D. Cal. Feb. 19, 2026); *Hoang v. Noem*, No. 25-cv-3177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (same). *See also Esmail*, 2025 WL 3030590, at *9 ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not

remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

Because the only identified changed circumstances post-dated Petitioner's re-detention, the decision to re-detain Petitioner was arbitrary and violated his due process rights. *See Muratov v. Marin*, No. 5:26-CV-00118-SPG-KES, 2026 WL 711841, at *1 (C.D. Cal. Feb. 3, 2026).

**D. Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release pursuant to *Zadvydas* and § 1231, it declines to address his alternative arguments.

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Nghi Vu Tran's (A #: 073-286-643) immediate release, subject to conditions of supervision that existed prior to his detention on May 14, 2026, along with the return of his personal belongings, including all of his identification, work permits, and other documentation, and preventing his re-detention absent constitutionally adequate pre-deprivation procedures; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: August 26, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE